Good afternoon. The Illinois Appellate Court First District Court is now in session. The 6th Division, the Honorable Justice Carl A. Walker presiding, case number 25-0313, James Foster v. Chicago Tribune Company. Good afternoon, everyone. I am Justice Carl Walker, and I have here with me Justice Aurelia Potensky and Justice Michael B. Hyman. And I'd like to now ask the parties who will be arguing to please introduce yourselves. James Kelly for Appellant James Foster. Ryan Saucier for Chicago Tribune Company. Okay. And Mr. Kelly and Mr. Saucier, you will each have 20 minutes to argue. And Mr. Kelly, you may want to reserve some time for rebuttal. If that's the case, you can tell us now how much time you'd like to reserve. Yes, Justice, if I may, I'd reserve five minutes. Yep, absolutely. And I think with that, we can go ahead and get started. Mr. Kelly. Thank you, Justice. May it please the Court, good afternoon, Justices, counsel. My name is James Kelly for Appellant James Foster. Justices, I'd like to ask by starting, what is somebody to do when they have been defamed or placed in a false light in an article, and it is transmitted out to the world to see? They can't stand out on a street corner with a megaphone blasting their innocence. If you're a baseball coach like Coach Foster, you can't prepare an academic response counterpoint like a scientist or an economist. Because of the damaged reputation, you won't be standing in front of a Power 5 media council being able to explain your side of the story. The only way, Justices, that Coach Foster can clear his name is in a court. And that's why I'm honored to be here today on behalf of Coach Foster to try to give him the chance to let this case proceed, proceed through discovery, let the truth come out, and let him clear his name and get his day in court. But isn't this a legal issue? It is, Justice. And fortunately, it's a de novo review. And you get to look at this with a fresh set of eyes. And if we establish the things that we've established, this should go back down to the court to allow us to proceed forward. The first thing that we need to look at is, is this defamation? And our Supreme Court has told us that defamation is a harm to somebody's reputation to the extent that it lowers the person in the eyes of the community, and it makes people not want to associate with them. But the question here is, you've claimed, per se, defamation. Okay, so that's what we got to center on, the legal issues. And yes, Justice, and with regard to that, so define for me, what is the test for per se? In Illinois, Your Honor, there are certain categories that if they fit the defamatory statement, they're defamation per se. And in this particular case, we have that we have, we have two of those categories. We have the statements in this case have imputed the inability for him to perform his job with integrity. And they also have imputed a lack of his ability to perform his job and prejudiced him in his profession as a baseball player. But that's your argument. But there also is the innocent construction rule, correct? That applies here. It does, Your Honor. So the question is, doesn't it apply here? It does. It does. I'm not saying that you'll agree with the answer. I'm just saying. That's right. You're exactly, you're exactly right on, Your Honor. And so the first step is, because we have those two factors that I just outlined, this is a per se case. And giving the plaintiff the benefit of the doubt at the pleading stage, and given what we have here. And now we move on to the question Your Honor is asking. And that is, is there an innocent construction here? And I think it's really important. Again, the Supreme Court has told us that this is not something that we look at in a vacuum. This is something that we have to get a context for the entire article to view the statements at issue here so that we can place them, what a reasonable reader and what a predictable response would be from a normal reader, not an esteemed justice, not a defamation lawyer, but a reasonable, predictable response from a reader. And in this particular case, the Supreme Court says we have to get a context. And I don't think there's any dispute about that from either party. So if you look at this article before we get to the specific statements, you have to look at how this is contextualized. And the language throughout this article, starting with the heading of this article about the controversy, it actually says dismissed among controversy. And if you read the article, this isn't a two-side controversy. This is removing a controversial coach. So that's the starting premise that we have phrases terminated immediately. We have him accused of problematic. But Mr. Kelly, aren't those just facts? And wouldn't it be correct that Illinois protects statements that cannot be reasonably interpreted as asserting actual facts? And if that's the case, and they're just simply asserting facts, how do we get there? Well, so Your Honor, what I was doing is laying the groundwork for the context to put the statements in. And I think it's really important here. When you look at these backgrounds, the language being used in this article, it will help us why we can distinguish why this case isn't like one versus the other, why it's not like Owen, why it's not like Green or Bryson. And so in our case, because you have to know the context, that many of these, all these cases are decided on the context. So the language, the bullying behavior, the abusive behavior reference. But wait a minute, this article is reporting on what Northwestern did. It's simply reporting, he was terminated. And they're reporting, are you saying they can't report that he was terminated? It's not accurate, Judge, Justice. What do you mean it's not accurate? That wasn't accurate. It wasn't that he terminated. The article appeared to discuss his termination. That's the way I understood the article. And that's inaccurate. He wasn't terminated? No, he wasn't. What's not accurate? What's not accurate? In getting into the- He was not terminated? Wait, let me ask you a question. Was he terminated? No. As of today's date, he is. But as of the date of the- He was relieved of his duties as the Northwestern baseball- Okay, he was terminated. I use the word terminated. You want to use the word removed? I'll change my language. Was he removed as of that date? Yes. And Justice, the reason why that's important- And that's the first line. Northwestern University has removed Jim Foster as head coach. So he's removed. That's what they're reporting on, isn't it? It is. And the judge's first line of order was he was terminated based on a human resource finding. And that's why this article was misleading. And this is why discovery is necessary in this case. He had a human resources investigation. Didn't affect his coaching ability at all. Went on to coach the season. And later, as a result of this media, at that point, was relieved of his duties. But not terminated. They continued to pay because there was nothing to fire him. You just said something I don't understand. We began this conversation by saying that this is per se. You agree? Yes. Okay. And in order to be per se, we look at the context and the words. Correct? That's what you said? Correct. Okay. And then you said something about discovery. That is irrelevant. It's per se. You don't need discovery. It's per se. Just the statement itself. Correct. The Illinois Supreme Court has said that you have to do this without the aid of extrinsic facts. Correct. So it's just on the words. And you're brief. And your arguments talk about discovery. Judge, I'm just asking for his day in court. I'm not saying that we need to- No, no, no, no, no. We want to follow the law. We have to follow the law. Okay? So are you saying that there is no reasonable reading of this article? No. I'm saying that the statements at issue, there's two statements that constitute defamation per se. And you don't need discovery. That has nothing to do with the legal issue. Those are that Coach Foster prevented people from going to the medical trainer. Wait a minute. Wait, wait. Let's start with that. It says that- He discouraged players from- They claim. It says they claim. The Tribune is reporting a claim. And the claim is he discouraged players from seeing the team trainer. He discouraged players. And then it says, or pressured injured players to speed up their timeline. So the words discouraging and discouraged and pressured, those are subjective, aren't they? Judge, on the first point as to being claimed, Justice, as to being claimed, that doesn't matter with Sinekowski case. If they're repeating defamation, it's defamation per se. No, no, no, no, no, no, no. That's not the law. That's not the law. Again, you look at the context and the word claim cannot be read out of this article. You're saying the word claim is irrelevant, but I believe the law says we read the context. In the context of that sentence, and that's the key sentence, that's what we're focusing on because those are the two words you're complaining about are in that sentence. It begins with the word claim. It's reporting what is claimed. So why is it per se? That's the issue before us. Yeah. And I want to get to that issue is that my point is, is that just adding the word they, it's they, they just say they, they also, they, that's what they say. And they're referring to, they're referring to repeating somebody's, somebody else's statement. And that's why, that's why I went to the Sinekowski first district case because that doesn't control the issue. As to your question, adding, talking about those two language, yes, those two words you said could have, could have, could be interpreted a certain way potentially, but that's not what the test is. It's a very restrictive test. The test is whether it can, it's factual, whether those things can be tested out. The Supreme Court has said in Bryson and other cases, ask the question, is there, are there facts and can they be answered in a yes or no, true or false type scenario? And these cases can, and counsel asks that in their brief. How can we do that? Well, that's what we do as lawyers. We can ask the questions, the yes, no questions. Did coach Foster, and it's a finite group of people. It's how many people injured on a, on a baseball roster. We know who they are. We know who the trainer is. Did coach Foster tell you not to go to the trainer? We can ask. That is beyond the scope of what is stated. We look at the words and the context. We all agree on that. And now you're going beyond those words and saying, we have to it's not per se because we have to look at extrinsic evidence in order to interpret it. That's what you just told us, judge. I'm saying it is per se and we don't need any extrinsic evidence. I'm telling your honor, asking your question that you asked me, there's some, you'd think subjective words in that statement. That's not what the test is for analyzing that particular sentence. It's a restrictive test that Bryson and green have told us. We're supposed to see, can it be interpreted as stating facts? And I'm telling you these two statements, these two keeping them from going, discouraging them and pressuring them not to get treatment or can be interpreted as stating facts. It's sufficiently factual. If it can be proven true or false. That's what I'm telling you. That's not my understanding of the test by the Supreme court. The test is, is in a per se case. Tell me if I'm wrong. That statement can, we're talking about the reasonableness of the reading of that statement. So a statement can reasonably capable of a non defamatory interpretation. It should be interpreted by that non defamatory interpretation. That's what the Supreme court has said over and over again. So if there's any reasonable interpretation, nothing with the facts, it's the interpretation. So if there is, and you said it's subjective, you admitted that. So if it is subjective, there could be a reasonable interpretation that this is non defamatory and therefore you would lose the, how do you get around that? I don't agree with you justice that I think these are subjective statements. I think the test in green is it's, there's three factors. The first is, is this and readily understandable. It is. We don't have, this is not a, this is not green. For instance, the case in green, it is to whom it may concern. And the person was accused of abuse, just general abuse. This is a very specific statement. So the first test in green is, is it, the Supreme court said, is it precise and readily available or understandable? Yes, it is. We can read that. Where do you come up with that? Is there any case anywhere in the country that has found those two words to be per se? I don't think you single in on one word, justice. I think it's, is there any case that has had similar wording that has been found per se? Yeah. I think, I think when you look at cases like, I think Bryson is a good example. Somebody is calling a girl a slut and the defense is saying, I'm going to the dictionary and we're calling her a bully. You know, and that's, that's not a reason. That's a whole different word. That's a whole different word. That's not the, the word here are, are, are adjectives. And, you know, are much different than the word you just mentioned. Well, I don't see where that. Justice. Yeah. And that's, that's why I wanted to start with the context of the article because the, these cases to it, the lawyer that was accused to be. Mr. Kelly, do this, go back and start with the context of the article and we're going to give you a second to do that. Yeah. And just the reason I was laying out all that, that defamatory, that, that hard language about coach Foster is that it creates a picture of somebody who is, you know, explicit, you know, with F bomb tirades, you know, black eye to the program, inappropriate comments about female staffers, human resource complaints, fear of retaliation by speaking out against him, players leaving the, the program. It's frightening, embarrassing, and sad unprecedented history in the program. Aren't all of those facts, Mr. Kelly. Yeah, those, those are, but those aren't, those aren't the, those aren't the lines, the precise lines we're talking about. I I'm trying to give the context to put those lines in you, you get, you get all of that context and then you get to the specific lines that we are complaining of. And that is, please continue. I won't cut you off. Go ahead. And that, and that is the two specific lines that we're complaining of are that he kept, he kept students from going to the trainer and he had them returned, you know, back, tried to return them back before they were ready. For instance, a pitcher trainer, medical staff says, keep him out for two weeks. I want him back in three days to make his start, which is deleterious. There's no way that is not in the article, but no picture is mentioned in the article about three. No, no, that's not in the article, is it? No, but what, but what I'm, I'm alluding to, you're going beyond the extrinsic, you're going to extrinsic facts. We have to let, we have to look in the four corners of the article. Correct. That's correct. Correct. But what you have to do is you have to ask the test is, do those statements contain facts? That's what I'm getting at. You have to look at the statements and I'm telling, I'm, my argument is yes, they do. They contain detailed facts can either be verified or not. And did, and did he keep somebody from going to the trainer justice is how you ask that question. That's a, that's a factual statement. You're forgetting a word, but the word is claimed. They claimed it. No, it's discouraged. And they're reporting what was stated as the basis for his being dismissed or removed, whatever word you want to use. And so you can't not read the word claim in there. And, you know, there's several people that had made that claim, current and former players and people close to the program. So they made that claim and it's being reported. And is it true? Is it not true? You know, it's a, it's a, it's a claim. And when claims are made of this sort, there could be an innocent construction. And if there is a possibility of an incident construction, you can't win. If there is not, you win. What is the innocent construction of telling a student athlete that he can't go see medical staff? There's no way to consent construction to that in the context of. This is saying he can't see medicals that he cannot see. Where did he say that? I don't see that. He discouraged. He discouraged players from seeing the trainer. Right. That could mean anything. Couldn't. Well, what, what is an innocent construction of having a student athlete not go see the trainer? There's no innocent construction in the context of this article. And the same with regard to returning a student athlete prematurely from injury. And the reason I gave up the, gave the example of the picture is that what we're supposed to do in the analysis is to look, does, do those two statements contain facts, verifiable facts? I'm not saying we go do discovery to make, to resolve the legal issue. I'm saying that's the query you asked to determine whether it in fact is a, an opinion, because what we're getting at here is we're not, we're not talking about on innocent construction. You know, in terms of, in terms of, you know, one of the things that you brought up is whether this is opinion, they're claiming this. And I'm saying that's the test to determine whether it's fact or opinion. And I'm saying it's, it's, it's a restrictive test under Bryson or green to, to tell whether in fact it's opinion or not. It's not somebody's opinion. If it's past contains facts. And so I'm saying it's a statement that's per se, that's not opinion. And it also is not capable of an innocent construction in the context of this article. You cannot. So Mr. Kelly, what you're saying is that the statement that fosters interactions with players and staff could be sometimes cold and at times combative. That would be an opinion, right? Correct. Correct. But then, but then going to the statement that foster would discourage players from seeing the team trainer or pressured injured players into speed up their, their timeline for returning from injury in fear, they would lose their spot on the team. That is not an opinion. You're saying that's stating a fact. Correct. You're just as exactly right. And the reason for that is using the Supreme court's test that are there factual facts contained in those verifiable facts. And that that's the three prong tests that I was talking about. Is it precise and readily understood? Yes, it is. It's not like the green case where the little league case that just said he was capable of abuse and treated umpires players and staff all the same. You know, this is very precise. That case is so different because that also involves that they still allow the parents to think to, to sit with, to assist with coaching and so forth. So absolutely right. Absolutely right. Justice. And that's why I wanted to bring up immediately terminated. It's different than the green case. That's not even close. You're exactly right. In that case, he was allowed to still go to practice and games and sit on the bench. That that's not the case. Yeah, correct. And so, so under the Supreme court test of whether there's verifiable facts in these two particular statements that we outline is the first is it's precisely and understandable, precise and readily understandable, very specific, not like vague vagueness or whatever. It's verifiable. It's a small group of people. We could ask them. And that's what I was starting to tell, uh, justice about how we would do that. I'm not saying we need to do that to resolve the dispute. I'm doing that to apply the test to determine whether there are facts there. It's, it's something you could verify or not. And the way they say, let's pause for a second, Mr. Cutler, let's assume that that is a fact. Then how does that change things for me? How does that change the trial court's analysis? Okay. So the trial court's analysis is just as, as justice was saying at the beginning, because there's that word discouraged or, uh, because it was attributed to somebody else, those are things that, uh, are not, are not, they're just opinions. And I'm saying that they're not, I'm saying that those are verifiable factual statements that can be proven based on the Supreme court's test. And now, so given that we're doing a de novo review, how does that affect our analysis? Well, so, so the, the good thing is we start off by they, that by this is per se defamation because the statements, the, the not letting injured players return, uh, premature, not letting them go see the training staff and, and being, and prematurely coming back from injury read in the context of this article, it impugns coach Foster's ability to, to manage young men, student athletes. So it puts it in the three, there's three and four, uh, both in the integrity of his job. And, um, the, the, the fact that he's not able to, to do his job without prejudice, that puts it in a per se category. So we have per se now, uh, defamation next analysis is, is there an innocent construction? My position on that is no, there's not what in a innocent construction can you give in the context of him being a loose cannon with all this stuff that they put in there that he wouldn't let him go to see straight training, uh, training staff, young men, and wouldn't let them let them, uh, or make them come back from injury prematurely. There's, there is no reasonable construction to those precise, precise statements. Those are the things we need to analyze to make sure that this, uh, fits legally is, is it an opinion or not? And that's, we got a little bit ahead of ourselves. That's what we were just talking about with the concept of if, if it can be, if it contains verifiable facts, if it's readily understood and precise. And, uh, if that's, if that's the case and it can be answered with a yes, no type question. And that's, I was hypothetically giving you how you could answer that, but could it, could it be simply interpreted that, uh, uh, he exercised poor judgment or maybe that, uh, um, he, he emphasized competitiveness and as opposed to, and then that would, that would create that innocent construction that we're talking about. Not, not in the context justice of that could be in the context of, uh, what, what my opponent is arguing that this is a case about coaching style, that this, I mean, this is an article about coaching style and, and demeanor. If that's what this article is about. Mr. Sarsay, Mr. Sarsay, we prefer you not nod your head either side for side to side or up and down. Can you please not do that during your arguments? Thank you. Go right ahead, Mr. Kelly. Yeah. And so what, what, what, what, with regard to these particular precise statements, I cannot come up with any innocent construction of a person. The reason he falls under per se is that his reputation and his ability to do his job with integrity as a college baseball coach, how you can put an innocent construction and call competitive to risk injury to a student by not letting them go see a trainer or premature or making him come back prematurely, uh, to participate in sports. I can't, you, you can say that maybe one of the reasons is that he's competitive, but that's not an instant construction for the statement, uh, that, that, that he gave, uh, or that they put in this article. There is no, there is no, uh, interpretation of that, that is, that is good. There, there's no interpretation that's reasonable. And that's what this, that's what the Supreme Court has told us. Let's not put, we can't reach for an inoffensive gloss to try to make this work. It has to be a reasonable, a reasonable interpretation of the statement in the context. And no, but Mr. Kelly, do you agree, do you agree that this is a speech or matters of public concern and therefore it receives a heightened constitutional protection? I don't, I think that, I think in general, uh, defamation per se requires, uh, like kind of like fraud, a heightened, uh, a heightened pleading standard. I do agree with that. Uh, I, the, the issues that we dealt with on the lower court were not public official or, uh, heightened concern to the public, but I do think that the, I have the obligation for a higher pleading standard when we're talking about per se in exchange for the, uh, not having to prove special damages. I think that's what the law is. So I agree with justice that we do have a heightened pleading standard. And in this case, we alleged the per se, uh, defamation and, you know, given the two things I've talked about, that it's not, we don't think there's an innocent construction and that we do not think it's opinion that we should be able to go forward on the pleadings. And that, that's what we're here to decide in terms of whether this case does establish a case for defamation per se. And, you know, the, the law is pretty much longstanding that the courts have to pretty much avoid that chilling of investigative journalism. And that is that an issue here at all? Do you know, I think that's the weighing, I think that's the weighing we get when, why, why there is that heightened pleading standard. And I don't think this is, I don't think this is that one of the components is, uh, is, you know, not that not being reckless. And there was a lot of things that could be done in this particular case, uh, to, to fact check these things. There's a lot of things that could have been said in this that would have, uh, allowed this article be totally acceptable. Well, they did, they did, they did speak with quite a few people who chose to remain anonymous and papers do that. Journalists do that all the time. Yeah. But justice, the thing that's interesting about that is that it didn't portray, it didn't portray one side versus the other side. And that that's the thing that when you look at these cases, Owen versus Carr, there was an ulterior motive that you looked at, or what did they give the reader? What was given to the reader that would have made him think that there's another side to this guy? That was the good side. There is no, there is no counterpoint to this article. And the title, what about the, what about the title in the first paragraph? And it says Northwestern dismisses Jim Foster's head baseball coach amid controversy, controversy. And that's what it says. And then the first paragraph uses the word controversy surrounding him. And that's what it reports. It's reporting that there's a controversy and that's what it's reporting. And that you have to look at it, as you said, in the context, in the complete article. And if you look at the word discouraged and, uh, uh, the, the pressured, uh, it is a controversy. And if there's a reasonable interpretation of those words, then we have to agree that with the lower court. Plus at the end of the article, they quote former Rhode Island players would say it was great. So they are giving two sides. I find it. And when you read this entire article, there's not one injustice, the controversy word, when you first read it, that's what you think you're going to read about a story about two sides. It isn't. It's about coach Foster being a controversial, uh, coach in all of his actions and the stirring up of that program and all the things that I listed. There's no two sides. The one line justice about a Rhode Island student, something that where he coached 14 years ago is the only line that is indicated in that whole article about anything that is even close to, uh, representing another side of the story. And, and we, we have a second, we have a second count in this. That's a false light complaint. And that, that reference to the Rhode Island team, I think needs to be put in context. Our, our position on the reference to Rhode Island was to get in the, to juxtapose the, not letting him have players play, uh, and see, or come back prematurely and not be able to see the trainer is to juxtapose the fact that that player died in a baseball workout when he was the coach at University of Rhode Island. And there is no, and this goes to the, it's disingenuous to say that this could have been fairly reported. There could have been a call made to Rhode Island. There could have been a copy of the complaint had to show that that was a medical malpractice case. They could have called the player's mom who would have vouched for coach Foster. There was a number of things that could done, but instead it's dropped into an article about coach Foster being a loose cannon and tough on his players and not letting him get medical treatment and put those two things in and then say there was a big settlement. And we also have a false light allegation and those, that statement about the Rhode Island player and dying during a team workout juxtaposed with the other statements that we're claiming in count one, we believe creates a false light. Yeah. I kind of see your concern too, Mr. Kelly, because they, they talk of, they give these three or two or three positive statements right before they go into the 2011 during Foster's time at Rhode Island, a 20 year old pitcher, the collapse. So the brain, so, I mean, I can see how it kind of just comes out of nowhere. Why is that in there, justice? Why, why is that in there? And the only reason that's in there is to sell this article and create an impression that that's a harbinger of what was happening at Northwestern, that he was hard driving and was not letting people get medical treatment. And this is what potentially could have happened to one of the Northwestern students. But right now, Mr. Kelly, you're out of time. Justice Hyman, did you have more questions at this time? Okay. So you're actually out of time, Mr. Kelly. Okay. Thank you, justice. Mr. Saucier. Good afternoon, your honors. And may it please the court. I want to try, we need to focus on the one statement, the one statement that is alleged to be defamatory per se, because I heard counsel change a bit what he was claiming was defamatory per se and put a different spin on some of the statements that were made. The statement is that current and key plaintiff discouraged players from seeing the team trainer or pressured injured players to speed up their timelines for returning from injury in fear that they would lose their roster spot, end quote. Now the dismissal of the defamation per se claim, based on that Northwestern statement, that's what we call it, the Northwestern statement was correct for two independent reasons. And counsel has conflated those reasons quite a bit, respectfully. First, the Northwestern statement is reasonably capable of an innocent construction and must be given, must be given that innocent construction under the innocent construction rule. Now, innocent construction doesn't require this court to find that the statement was positive or complimentary or favorable. It might be neutral. It might be even negative, but so long as it doesn't fit within a category of words recognized as defamatory per se, it is subject to the innocent construction test. Second, the Northwestern statement is an opinion of, and not a statement of actual fact. In either basis, it's sufficient to affirm the dismissal of the defamation per se claim with prejudice. Now, counsel has made the point that there are two categories, uh, that look at the tough coach idea. Is that, I mean, that's what he was saying. He said, if you look at the rest of the article, it kind of, it paints them as a tough coach and you can't ignore that part of it. So when you read those statements with the tough coach, then maybe it's per se, because it would, people would think, well, this is what he is. This is, this is really bad. This is not what coaches should do in college, which is what he's been arguing. I understand your honor. A tough coach saying somebody is a tough coach is not defamatory per se. It doesn't state that he lacks integrity. He's not arguing it's defamatory and neither my statement. My statement was it's the context. And in the context of a tough coach, it's saying that, uh, that, uh, what he did and, and then the final, uh, the false light one, uh, you know, that somebody died under his watch. So when you look at it all together, it's, it's more than just as tough coach. This, this goes to his ability to coach as a professional, which is one of the per se tests. Your honor, even if there is a defamatory meaning, the question is not whether there's a defamatory meaning. The question is whether there is a reasonable, innocent construction. What is that? Why is it reasonable? Tell us why is something, what is reasonable about it? Sure. So you do need, as the green court noted, you do need to look in as counsel acknowledged, you do need to look in the, at the statement in context and context is critical. And the lower court found that the statements could be understood that plaintiff's coaching style was harsh and abrasive. And the context of the Northwestern statement was in an article about Northwestern firing him amid a controversy and that the investigation in Northwestern's firing a plaintiff was based on authentic feedback by students. And importantly, in the paragraph immediately preceding the Northwestern statement, the article states that people close to the program and plaintiff's interactions with players and staff quote, could be cold at times and at other times combative. And the very next paragraph gives examples of that cold and combative style. And that's where the Northwestern statement appears. So in this context, the Northwestern statement as an example of plaintiff's cold and combative style could be reasonably understood that plaintiff was not warm or coddling of his players, that he was a hard-nosed coach. He pushed them to be tough. He pushed them to work hard to try to get back onto the roster and that roster spots were not an entitlement. This might not be complimentary. It might even be negative, but that's not defamatory per se. It states that he discouraged the player. Isn't that something that's factual that can't, as counsel stated, that this is very factual? Well, that's a separate question of whether or not it's opinion, but whether or not it's an construction is the question is, can this be understood to be outside of the categories of words that are accepted as defamation per se? And as your honor noted, the statement is that he discouraged players from seeing a team trainer or pressured them. It doesn't say that he prevented them from seeing the team trainer. It doesn't say that. Again, you have to take it in context. He's a coach of young men and he discouraged them. So in that context, that word has only a negative connotation that would defame him and injure him in his profession because it says that he was doing something that is inappropriate. Your honor, it isn't necessarily inappropriate. For instance, the to speed up their timeline. That could be reasonably understood to mean that he encouraged them to work hard, to get back, don't sit on the sidelines, work hard to get back, to get on that roster because your roster spot is not an entitlement. And you may, you probably would be correct in your response to Justice Hyman right now, if they hadn't, the article had not gone on to say that he did this by producing this fear that they would lose their spot on the team. Well, if they sat on the sidelines and didn't work hard, maybe they would lose their spot on the team. No, but the difference Mr. Sauci is it's in the same context. It's in the same paragraph, probably even the same as the other statements. Sure. And they could lose their spot on the team if they didn't work hard to get back to being able to play. There's nothing wrong with saying that sounds too much like a threat that, you know, if you go see the trainer and you don't get yourself together quickly, you're going to lose your spot on the team. But that's not what was said. What was said is that he discouraged people. I'm sorry to say that if you go to see the trainers, do not think you don't go. I spoke earlier. Right. And you know what I want to turn. So we're getting a little bit now into the opinion section. And therefore, the analysis is whether or not the statements had a precise and readily understood meaning, whether they were objectively verifiable in the social and literary context in which the statement was made. And here, the Northwestern and also recounting allegations by a party to a dispute, our opinion, because readers understand that the report is about allegations and not about statements of fact. This is a matter that Justice Hyman was making a distinct distinction about earlier, and that was the case in Owen versus Carr. So here, the Northwestern statement recounts that student athletes claim that the plaintiff discouraged them from seeing trainers or pressured them to speed up. These are the students perceptions, and perceptions can differ from person to person. The statements are not factual in nature. They are not that the plaintiff prevented anybody from seeing the trainer or that the plaintiff required anybody to play injured. And underscoring that different players can have different views of plaintiff's style and approach to coaching is that the Tribune also reported contrary opinions, that plaintiff was, quote, a great leader, that he was, quote, a mentor, that he was, and this one's especially important, quote, a teacher, tough but fair, who cared deeply about his teams, end quote. And it even has one student claiming, quote, he was by far the best coach I've ever had. So these statements are not precise and readily understood. They are expressions of opinions of plaintiff's style, and they can mean different things to different people. And the article makes clear that there were people with polar opposite views of plaintiff's style. That's exactly why those statements are different from the statements that we're actually discussing here. But then even after they make those positive statements about him, they go on to talk about the 2011 incident where the player died. So, and again, as Mr. Kelly has argued, that was a medical malpractice situation. That wasn't, that he had no blame in that. And I think Mr. Kelly went on to say that had they simply made a phone call to his parents or probably even to the school or to someone, they would have learned that he had nothing to do with that. But yet that was included to really kind of highlight this and to really probably ruin his career. Your Honor, I respectfully disagree because I think when you look at what the tribune- Which part do you disagree with? Do you disagree that this could ruin his career? Is that what you disagree with? Well, he was already fired or was relieved of his duty- Being fired from Northwestern is one thing. Being able to never coach again is another. Correct. But Your Honor, he did not, this tribune did not state that the plaintiff was to blame for that. They truthfully reported that the parents sued the university. The tribune did not say that the plaintiff was responsible for the Rhode Island student death. The tribune did not say that the plaintiff sued the plaintiff. The tribune did not say that anyone blamed the plaintiff. And the tribune did not say that the plaintiff was even at that session. Instead, that workout session. Instead, the tribune truthfully said, truthfully reported that the student died after an outdoor strength and conditioning session, but not that it had anything to do with the statements that it made in the Northwestern statement. The tribune did not, the Rhode Island statement had nothing to do with not seeing a trainer. It had nothing to do with being forced to return from an injury early. There is no juxtaposition there. There was no similarities- No, but what about this fact of silence and the false light? What you're saying is the tribune was silent. Silence can be false light. In a situation where a reasonable reader is going to look at that and say, wow, why is that there? The issues Mr. Kelly raised, that's there because he must've been involved in that in some way. They don't explain that he wasn't even there that day or whatever it was. They just put it out there with the implication being because they don't explain what it all means. That's the false light. Your Honor, the answer to that is that the innocent construction rule applies equally to false light as it does to defamation per se. If you find that there is an innocent construction to the Rhode Island statement, then that triggers the requirement that plaintiff plead special pecuniary damages. He didn't do that here. He does not argue that he did it. He does not argue that he had the ability to do it. He waived that issue in the lower court. That requirement of pleading special damages, pecuniary damages, was not met and plaintiff never argued- No, we understand that. That's why it's per se. I'm sorry? That's why it's a per se defamation. I understand. But if there is a non-defamatory per se construction that is available, the court must give it that construction. That's the city of Chicago day school versus way that says there's no balancing of constructions or as the seventh circuit somewhat said colorfully in Latin versus Levitt, any innocent construction sounds the death knell for a defamation per se claim. And I think we need, I just want to go back to this opinion issue because I think this is like Owen versus Carr where in Owen the court held that a lawyer's statements were non-actionable opinions of allegations against the plaintiff. And plaintiff tries to distinguish Owen by arguing that the tribune did not report on competing sides. And he said so again in his oral argument. Well first, nowhere in Owen did the defendant report on competing sides. So that's not really a distinction. But second here, the tribune actually did repeat report on competing sides. There was enough information in the article for a reader to understand that these were viewpoints and allegations. And the headline notes that there was a controversy, not a cut and dried set of circumstances. And there were competing viewpoints to boot. So what this, what the plaintiff is actually asking this court to hold is to permit him to maintain a defamation suit against the tribune for its reporting that he was fired and why. There's no other way to report this. Under plaintiff's theory, the tribune can only report that today Northwestern fired the plaintiff, but we can't tell you why or what the claims were that led to Northwestern firing the plaintiff. I do think that this lower court... But Mr. Sarsier, you probably agree though that there was really no need for that statement regarding the 2011 incident at Rhode Island. There was no need for that. That wasn't relevant to anything. Your Honor, it was in the midst of the end of the article where they were recounting his past employment and it was a significant event that occurred at that point. I don't think it's up to the court to... But the way it's written, Mr. Sarsier, it makes it sound... When you start off with during Foster's time at Rhode Island, that the 20-year-old pitcher collapsed while running during an outdoor strength and conditioning session. So, I mean, it just makes it sound like he was responsible for that. Your Honor, it was part... I'm sorry, I mean to cut you off, Mr. Sarsier, but especially after all of the other information about him discouraging players from seeing the trainer and telling players that if they don't get back to their full condition quickly, that they're probably going to lose their spot on the team, things like that. And then we come with this that, okay, during this strength and conditioning session that this individual collapsed and died. We make it sound like that he was responsible for that too. And that's what makes this really bad. Your Honor... Bubbling, I should say. Your Honor, I think that that statement at the end is part of the controversy that surrounded the plaintiff. And also, I think you have to acknowledge... What controversy? What country are you talking about? Because the controversy of the New Rhode Island was years before, right? So, that controversy and what's going on in Northwestern, they're separate situations.  I mean, if that wasn't in there, it wouldn't change anything, right? I'm sorry, I'm not... If that information about Rhode Island wasn't in the story... Correct. Would it change anything about the Northwestern? Probably not. But I don't think it's up to the court to engage in an editorial process to determine what is and what is not newsworthy. I think the test is... No, but that's not the issue. The issue is false light. And false light has to do with an impression rather than a statement. And the impression it leaves is that this coach was responsible for what occurred in Rhode Island, even though, as you said, it doesn't say that specifically, but the impression left by that. And what they did to counter it is, well, one player said he was a great coach, but it still doesn't get to... Given the specifics, so that the impression... You would get a false impression from getting that, wouldn't you? Your Honor, I think what's missing in that analysis is that the innocent construction rule applies to the false light. So that even if you have a defamatory per se construction, when you apply the innocent construction rule, you're always presuming that there's, in fact, a defamatory construction. And the question becomes, is there also a reasonable non-defamatory construction? And the court must then apply that innocent construction. So even if the court sees or comes to the conclusion, there is some defamatory construction here in the Rhode Island, where we start off as our baseline. Sure. There's no point in applying the innocent construction rule if we don't... What's the reasonable interpretation? The reasonable interpretation is the exact words that were used, that this incident, the exact words that were truthfully used, that this incident happened, and it happened while plaintiff was the coach there. The fallacy of plaintiff's argument is then you just run into this buzzsaw of the innocent construction rule. There's no case law cited or that I've seen available that says that a statement that cannot rise to the level of a defamation per se, that when a statement does not rise to the level of a defamation per se, somehow finding an implied or an implication overcomes the innocent construction rule. It's not defamatory per se, and that caused and triggers the requirement to plead special pecuniary damages, which plaintiff hasn't done here. The cases are also clear in Illinois that falsity is required. That's Kirshner v. Green at 683, all of which are cited in this brief, and the plaintiff is using this implication by trying to link the Rhode Island statement with the Northwestern statement that appears 10 paragraphs before it, and there's laudatory statements about the plaintiff in between and recitations of his employment history in between, allowing the false light claim to go forward on a true statement, a literally true statement, is unprecedented in Illinois. There is no case law cited. So Mr. Sasse, you're kind of out of time, but I want to back up to something though. Mr. Kelly has been arguing that the original statement regarding players being discouraged from seeing the team trainer or pressured to hurry up, work on a timeline of sales back to full force. So with all of that, he's claiming that those are facts, but they're not true facts, and he believes that if nothing else, he should be granted an opportunity to bring some people in and prove that those facts are actually not true facts. How do you respond to that? Your Honor, they're not facts, they're opinions, because they're impressions of the student-athletes, and the Tribune even cited opposite impressions of student-athletes, and whether or not a statement is, one, capable of being opinion is a question of law. It is not a factual inquiry that is dependent on discovery. Both the innocent construction rule and the application of opinion are questions of law for the court as a gatekeeper to a defamation claim, so as to not have chilling of speech or of reporting or journalism. So, Mr. Sasse, you're out of time. Thank you, Your Honor. Justices, did you have more questions for Mr. Sasse? Okay, no more questions there. So Mr. Kelly, you can go ahead with your rebuttal. You have five minutes. All right, thank you, Justice. I want to pick up right where you left off, in that I don't want this to be misconstrued, and I think I was not communicative at the beginning with Justice Hyman and got things off track a little bit. I'm not saying we need to go take discovery to decide this legal issue. This factual issue that's important here is looking at the in this the statement as to the test of whether it is a factual statement versus an opinion. And so it's a legal question, but that's how you resolve the legal question is to ask that if it can be proven true or false. Unlike loose figurative language like the Stephen Smith, you know, wants to send a curse to somebody's house, hyperbolic language, this is not that. This is factual statements that that's the test to determine whether that is a factual statement rather than an opinion. That's why it's relevant. The article says that the Tribune spoke to students who wanted to remain anonymous, and this was what they were saying. So the Tribune did reach out to students, and this is what they heard from the students. Now that may be the students' opinions, but it's not like they made it up out of whole error. They talked to students, and staff members, and this is what they said. Correct. And if it has in the two statements that we're complaining of, if you apply the restrictive test of the three prongs, is it precise and readily understandable, which not like green. If you apply that, we have very detailed statements about the trainer and returning from injury. They're verifiable. We have a small group of within the team are the ones that are injured. We have a trainer, so we can fact check those. And is it, you know, are the specific factual allocations, does it have factual content? It does. So it doesn't matter the source. It's just that's the test to determine whether it's an opinion versus a fact. And my position is that it passes the test that these two specific, and when counsel in the beginning says I'm talking about multiple statements, within that one sentence that we've complained, it has two clauses that are, we say both of those are false. The pressuring to not see the trainer and returning from injury. And I'm paraphrasing, but those are the statements that I'm talking about. And then the third is the Rhode Island statement. So, and as to that, I am honestly, my colleague has just said to you, I don't know how you can link the Rhode Island to the two precise statements that we're complaining of for defamation per se. And I want to direct you, I think it's really important to direct you to my colleague's brief at page 13. And exactly what my colleague is arguing is exactly what this argument that, what this article is trying to convey. And I want to start by saying there's no way anybody reasonable, which is what we need to determine here, a reasonable response to this article. There's nobody in this room that can say that they didn't ask the question, why is that in there? And the reason it's in there is try to create a link to Foster's coaching style and the risk to harm to NU students. And there's no other explanation. There's no reasonable explanation. There's no innocent construction, nobody who's logical, reasonable, or that initial reaction from a normal reader that the Supreme Court is talking about could say that. And so here's what I want to direct you to. Counsel's brief at page 13, as he's just said to the court, how can you link these two things? Here's Tribune's brief, quote, nor is it inappropriate for the Tribune to report on plaintiff's prior employment stints, including one at a military academy at West Point, buttressing his drill sergeant persona and one at Rhode Island where a player did die during a workout. Counsel links them. That's what the article did, is linked them. As to the false light claim, we have a false, we've already alleged a per se statement that's false. So we've satisfied the falsity requirement that he's talking about. We've also destroyed any innocent construction by using my friend's brief and the link that he's talking about, the drill sergeant persona, causing buttressing it with the statement where a player died during a workout. It's so disingenuous to say that this is a story about coaching style or about demeanor. That's not what this article is about. This article is about this being deleterious to the students at Northwestern. And this is a pattern with Coach Foster's coaching style. And as Justice Walker said, this is why this coach will never be able to get to a podium in front of a power five conference media again to explain his side of the story, because he'll never work again. Mr. Kelly, I'm sorry. I'm going to talk to you. You only have about 15 seconds left to close out. And Justice, I think it's important to note that the impression that counsel gave as to the hard driving coaches that came to mind for him when he read this article, Woody Hayes, who punched a student. He brought up Bobby Knight, who strangled a student. And he brought- Mr. Kelly, you're actually out of time, but just always ask questions. This is just a time and do you have more questions at this time? And that was the time- I would only- One second, Mr. Kelly. Go ahead, Mr. Justice. I would refer to what else is on that paragraph. And that is what the Supreme Court of Illinois said in green about coarsely reproaching players, coaches, and umpires. And that's why he used those examples of coarsely reproaching by coaches. And that, when the Illinois said, is neither unusual nor unexpected in amateur athletics. So he's saying that under a Supreme Court precedent, under green, this is no different. Justice, we're talking about a little league coach who was allowed to still coach and sit on the bench. I'm not talking about a little- I'm talking about what the word said. Amateur athletics, that's what they said in green. You know, you're saying, okay, well, that case only has to do with little league? Is that your argument? Well, I think that we have to be reasonable about the interpretation. He's talking about the link between not letting kids get medical treatment and being pressured to return to after- quickly after injuries. And in a prior coaching stint, during one of his baseball coaching workouts, a player died. And I'm telling you, the examples he gave were Woody Hayes and Bobby Knight, not Coach K or Joe Girardi. It's one thing to be late. Don't be late for practice. Take a charge. Play tough defense. It's another thing to say, I'm not going to let you get medical- or don't discourage you from getting medical treatment, or you're going to come back from injury too quickly. Those are two entirely different things, Your Honor. And that's why this is a false light. It should be, you have a new set of eyes. You can send this back. If we were on summary judgment, if I can't prove it, we'll be done on summary judgment. But we've met the legal standards of false light. And we have also, we've also showed per se, there's no innocent construction, and it's not opinion. And I disagree that the last thing on the falsity thing that we have to show that in Illinois, I cited the Love-Gren case, and the restatement has been adopted. And there's been a number of cases that could have said that falsity was required and have not. So, Your Honor, I would ask that because we've shown false light, we've shown that there's defamation per se, there's no innocent construction, and there is no opinion that this should return back to the court, circuit court, allow us to proceed and let this gentleman clear his name. And I appreciate everybody's time and attention and questions today. Okay. Are there more questions, Justices? Okay. Thank you. You both did an excellent job today, and we appreciate excellence. You know your case, you both know the case really well, and we also appreciate that. So again, know that you've done an excellent job. Have a good day, everybody. Thank you, Justice Walker. Take care, everyone.